IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KERRI C.,[1]

                Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

                Defendant.

Case No. 6:24-cv-01841-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

     Kerri C. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c). For the reasons explained below, the Court reverses the Commissioner's decision and remands for further proceedings.

///

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

**BACKGROUND**

I.  **PLAINTIFF'S APPLICATION**

Plaintiff was forty-eight years old on September 21, 2017, her alleged disability onset date.[2] (Tr. 196.) Plaintiff completed up to eleventh grade and had past work experience as a project coordinator, administrative secretary, and insurance clerk. (*Id.* at 52, 188.) In her application, Plaintiff alleged disability due to kidney failure, vaginal atrophy, pelvic floor muscle spasms, uveitis, osteoarthritis, locking hip joint, cataracts, glaucoma, retinopathy, and Cushing's Syndrome. (*Id.* at 187.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on December 30, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 64, 78, 101.) On November 15, 2023, Plaintiff, along with her attorney and an impartial vocational expert ("VE"), appeared and testified at an administrative hearing before an ALJ. (*Id.* at 29-55.)

On January 24, 2024, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 15-21.) On September 5, 2024, the Appeals Council denied Plaintiff's request for review,

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016 TAG, 2008 WL 4490024, at *4 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of December 31, 2022 (Tr. 15, 17) reflects the date on which her insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before December 31, 2022, she is entitled to DIB. *See Truelsen v. Comm'r of Soc. Sec.*, No. 2:15-cv-2386-KJN, 2016 WL 4494471, at *1 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998))).

making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.     THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

///

///

PAGE 4 – OPINION AND ORDER

### III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-21.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of September 21, 2017 through her date last insured of December 31, 2022. (*Id.* at 17.) At step two, the ALJ found that Plaintiff had the following medically determinable impairments: interstitial cystitis, obesity, diabetes mellitus, restless leg syndrome, cataracts, glaucoma, retinopathy, and vaginal pain. (*Id.*) The ALJ then concluded that Plaintiff had not established that any of those impairments or combination of impairments was severe. (*Id.*) The ALJ accordingly determined that Plaintiff was not disabled at any time from the alleged onset date through the date last insured. (*Id.* at 21.) The ALJ did not reach the third, fourth, and fifth steps of the sequential evaluation process. (*Id.*)

### DISCUSSION

Plaintiff argues in this appeal that the ALJ erred at step two by concluding that Plaintiff's medical impairments were not severe. (Pl.'s Opening Br. ("Pl.'s Br.") at 2-15, ECF No. 9; Pl.'s Reply at 1-6, ECF No. 12.) Plaintiff attributes the ALJ's failure to find a severe impairment at step two to his improper evaluation of Plaintiff's subjective symptom testimony and the medical opinion of Jessica Lloyd, M.D. ("Dr. Lloyd"), Plaintiff's urologist. (*Id.*) The Commissioner responds that the ALJ properly relied on the state agency medical consultants' opinions to conclude that Plaintiff's impairments did not limit her ability to perform basic work activities. (Def.'s Br. at 2, ECF No. 11.) For the reasons explained below, the Court finds that the ALJ erred at step two of the sequential evaluation process.

///

///

///

PAGE 5 – OPINION AND ORDER

I.      STEP TWO

    A.      **Applicable Law**

Step two of the sequential evaluation process is a de minimis procedural device used to screen out groundless disability claims. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims,' and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence.'" (first citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); and then citing SSR 85-28, *available at* 1985 WL 56856)).

To proceed past step two in the sequential evaluation process, a claimant must provide evidence of one or more "severe" impairments which establish more than a minimal effect on the claimant's ability to perform basic work activities. *See* 20 C.F.R. § 404.1512 (describing the claimant's responsibility to submit evidence of the nature and severity of any impairments); § 416.912 (same). An impairment is severe if it "significantly limits" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."). "Basic work activities" are "the abilities and aptitudes necessary to do most jobs," such as:

>   (1)     Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
>   (2)     Capacities for seeing, hearing, and speaking;
>
>   (3)     Understanding, carrying out, and remembering simple instructions;
>
>   (4)     Use of judgment;

PAGE 6 – OPINION AND ORDER

  (5)  Responding appropriately to supervision, co-workers and usual work situations; and

  (6)  Dealing with changes in a routine work setting.

*Id.* § 404.1522(b). "[T]he ALJ must consider the 'combined effect' of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing 20 C.F.R. § 416.923).

  "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered[.]" SSR 85-28, *available at* 1985 WL 56856; *see also Webb*, 433 F.3d at 686 ("An impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" (first quoting *Smolen*, 80 F.3d at 1290; and then citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988))).

  The Ninth Circuit has "reiterated the corollary principles that claimants need only make a de minimis showing for the analysis to proceed past [step two] and that properly denying a claim at step two requires an unambiguous record showing only minimal limitations." *Glanden v. Kijakazi*, 86 F.4th 838, 843-44 (9th Cir. 2023). The Ninth Circuit recently noted that "[b]ecause it is relatively rare for an ALJ to deny a claim at step two, our caselaw contains few examples of cases where the analysis ended at this step." *Id.* at 844 ("We have published only three such opinions: two remanding the case to the agency, *see Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001); *Webb v. Barnhart*, 433 F.3d 683 (9th Cir. 2005), and one affirming the ALJ's denial

PAGE 7 – OPINION AND ORDER

of benefits, *see Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).");[3] *see also Webb*, 433 F.3d at 687 (describing step two as "a de minimis screening device used to dispose of groundless claims") (simplified).

In summary, denying a disability claim at step two "requires an unambiguous record showing only minimal limitations" and a reviewing court must determine "whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Glanden*, 86 F.4th at 844 (quoting *Webb*, 433 F.3d at 687); *see also* SSR 85-28, *available at* 1985 WL 56856 ("Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued").

### B.     Analysis

The ALJ concluded at step two that Plaintiff did "not have an impairment or combination of impairments that significantly limits . . . her ability to perform basis work activities" and

---

[3] "In *Ukolov*, we affirmed the ALJ's step-two denial because 'even the claimant's doctor was hesitant to conclude that any of the claimant's symptoms and complaints were medically legitimate.'" *Glanden*, 86 F.4th at 845-46 (quoting *Webb*, 433 F.3d at 688). "Indeed, the *Ukolov* claimant failed to show that he had any diagnosed impairments, and his physicians were unable to verify his alleged symptoms through any medical examinations or test results." *Id.* ("Step two is intended to screen for precisely this sort of frivolous claim." (citing *Ukolov*, 420 F.3d at 1005)); *see also Marshall v. Colvin*, No. 23-3958, 2025 WL 32824, at *1 (9th Cir. Jan. 6, 2025) (holding that where the claimant "provide[d] only a single checkbox form completed by a psychiatrist indicating treatment for bipolar disorder that postdated the relevant period by nearly four years[,]" the claimant "failed to meet his burden of proof at step two, [and] the ALJ's finding that no severe impairment existed during the relevant period [wa]s supported by substantial evidence").

therefore was not disabled during the relevant period. (Tr. 21.) For the reasons discussed below, the Court finds that the ALJ prematurely ended the sequential evaluation process at step two.

### 1. Plaintiff's Symptoms

Plaintiff completed three adult function reports as part of the application process, dated March 15, 2021, April 23, 2021, and January 19, 2022. (Tr. 198-205, 220-231, 242-254.) Plaintiff also testified about her symptoms at the hearing. (*Id.* at 35-51.)

In her function reports, Plaintiff explained that her ability to work was limited due to her: interstitial cystitis that caused a frequent urge to urinate, dysuria that caused pain when urinating, uveitis that caused burning in her eyes and headaches, glaucoma that caused stabbing eye pain and blurry, red eyes, cataracts that caused a large cloudy white haze in her vision, osteoarthritis caused by taking prednisone for over fifteen years, bone spurs that caused pain in both of her feet, her right hip, right bottom, and hands, pelvic floor muscle dysfunction that caused pelvic muscle spasms, and a hernia that caused a stabbing pain and limited lifting and reaching. (*Id.* at 198.)

Plaintiff elaborated that her arthritis caused her to get very little sleep due to being "up every [forty] minutes or so to switch sides to take the pressure of[f] my hips"; on a "high pain day" she did nothing until her husband arrived home; and while she used to love quilting, she had to stop because she could no longer see well enough to thread the needle. (*Id.* at 199, 201-02.) Plaintiff stated that the "WORST" of her many symptoms was "the constant having to urinate with interstitial cystitis." (*Id.* at 205.) Plaintiff reported that "[e]very day I pee every [thirty] to [forty] minutes" and that made it hard for her to plan anything because "[t]here is no consistency except peeing all day." (*Id.* at 220.)

In her January 19, 2022, function report, Plaintiff reported she could not stand more than twenty or thirty minutes due to osteoarthritis and bone spurs in her feet and hip, could not walk

PAGE 9 – OPINION AND ORDER

more than twenty minutes because her hips locked up due to the arthritis and bone spurs, and she fell a lot because of blurry vision and instability due to her arthritis. (*Id.* at 242.) Plaintiff again reported she had to urinate every thirty to forty minutes due to her interstitial cystitis. *Id.* She stated she could walk roughly one tenth of a mile or fifty yards and had to rest for one hour "for every [twenty] mins of anything." (*Id.* at 247.) Plaintiff explained that she was prescribed a cane because of her falls, but she was unsure how to use it or how it would help her from falling. (*Id.* at 248.)

At the hearing, Plaintiff testified that she was unable to continue at her prior job because her eye impairments made it difficult to see reports on her computer, and she would have flareups six to eight times a month when her eyes were so bad she could not work at all. (*Id.* at 36, 40, 46.) She would also be unable to return to a previous job because her frequent bathroom use—up to three times an hour—would be unacceptable and prevent her from hitting her call quotas. (*Id.* at 45.) She also explained that she waited to file for disability because she hoped her conditions would improve and she would be able to return to work. (*Id.* at 48-49.)

The ALJ discounted Plaintiff's symptom allegations, finding that "the claimant's medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision." (*Id.* at 19.)

### 2.    Dr. Lloyd's Opinion

In a medical opinion dated February 27, 2023, Dr. Lloyd reported that Plaintiff had been diagnosed with pelvic pain, urinary urgency, dysuria, and high tone pelvic floor disorder. (*Id.* at 703.) Dr. Lloyd explained that Plaintiff's urgency of urination and pelvic pain had lasted or could be expected to last at least twelve months, with a risk for flareups. (*Id.*) Dr. Lloyd reported

PAGE 10 – OPINION AND ORDER

that Plaintiff had to lie down at least three times a day for about an hour at a time. (*Id.* at 704.) When asked if Plaintiff would be absent from work due to her medical impairments, Dr. Lloyd selected "[n]ever" and wrote "[patient] had to leave her job." (*Id.* at 705.) When asked to elaborate in a follow-up letter, Dr. Lloyd explained she meant that Plaintiff had already stopped working. (*Id.* at 730, explaining that Plaintiff "had to leave her job" because "[s]he was missing more than [six] days a month.")

The ALJ found Dr. Lloyd's opinion unpersuasive because "Dr. Lloyd opinioned that the claimant would have a significant degree of absenteeism but based this limitation on the claimant's prior work history." (*Id.* at 20.) The ALJ found that the level of absenteeism was inconsistent with the minimal findings of record as well as Plaintiff's improvement with treatment as noted in the record. (*Id.*)

   3.  **Step Two Error**

The Court concludes that the ALJ erred by ending the sequential evaluation process prematurely at step two where there was not substantial evidence in the record to establish that Plaintiff's claims were groundless. *See Webb*, 433 F.3d at 688 ("The ALJ should have continued the sequential analysis beyond step two because there was not substantial evidence to show that [the claimant]'s claim was 'groundless.'" (quoting *Smolen*, 80 F.3d at 1290)).

First, the record before the ALJ was not "an unambiguous record showing only minimal limitations." *Glanden*, 86 F.4th at 843-44 ("[P]roperly denying a claim at step two requires an unambiguous record showing only minimal limitations."). Rather, as summarized above, Plaintiff reported functional limitations stemming from, *inter alia*, her interstitial cystitis,[4] a

---

[4] "Interstitial cystitis 'is a chronic inflammatory condition of the bladder in which the bladder develops multiple 'pinpoint' hemorrhages causing patients to experience urgency and

PAGE 11 – OPINION AND ORDER

diagnosis confirmed by her treating urologist. The Court finds that the record included "evidence of problems sufficient to pass the de minimis threshold of step two." *Webb*, 433 F.3d at 687 ("Although the medical record paints an incomplete picture of [the claimant]'s overall health during the relevant period, it includes evidence of problems sufficient to pass the de minimis threshold of step two." (citing *Smolen*, 80 F.3d at 1290)); *Combest v. Dudek*, No. 24-4655, 2025 WL 1121637, at *1 (9th Cir. Apr. 16, 2025) ("[The claimant]'s claims were not frivolous. She alleged severe functional limitations resulting from the combination of her impairments, and the record did not unambiguously show that her limitations were minimal. The ALJ therefore erred in dismissing her claims at step two."); *Glanden*, 86 F.4th at 845 ("Because we interpret step two as screening out only groundless claims, the record in this case counsels [remand for further proceedings].").

Further, the record lacked substantial evidence to support the ALJ's conclusion that Plaintiff did not suffer from a severe impairment. Specifically with respect to Plaintiff's interstitial cystitis, the ALJ acknowledged Plaintiff's diagnosis but concluded that the impairment did "not result in any functional limitations that would significantly affect the claimant's ability to perform basic work activities for a continuous period of at least [twelve] months." (Tr. 19.) Although the ALJ cited a urology record from June 2022 reflecting that Plaintiff's daytime symptoms were "quite manageable" at that time (*id.* at 19, citing *id.* at 689, 692), the ALJ failed to acknowledge that Plaintiff returned to her treating urologist in early 2023 reporting "a [ten]-day episode of severe urinary frequency ([forty-two] voids/day) last month, with pelvic pain and no associated UTI." (*Id.* at 708.) At that visit, Plaintiff's treating urologist

---

frequency in urination, as well as pain in the abdominal area.'" *Lindie K. v. Kijakazi*, No. 3:21-cv-01589-SB, 2023 WL 2597611, at *1 (D. Or. Mar. 22, 2023) (simplified) (citation omitted).

PAGE 12 – OPINION AND ORDER

concluded that Plaintiff's "recent debilitating pain flare" was causing "significant stress in [her] inability to perform activities[.]" (*Id.*) The ALJ did not question the credibility of Plaintiff's testimony about her frequent urination or pelvic pain flareups, and did not address whether Plaintiff could perform basic work activities despite her chronic pain and need for frequent bathroom breaks.

Instead, the ALJ relied on the state medical agency consultants' opinions that Plaintiff's "genitourinary issues" should "produce only mild functional limitations," but the agency opinions were inconsistent with Plaintiff's testimony and Dr. Lloyd's opinion and treatment notes reflecting that Plaintiff's frequent urination and pelvic pain were impacting her ability to perform activities of daily living. (*Id.* at 45, 708.) Where the medical record documenting Plaintiff's debilitating urinary issues was consistent with Dr. Lloyd's medical opinion and Plaintiff's testimony, substantial evidence did not support the ALJ's conclusion that the medical evidence clearly established that Plaintiff did not have a severe impairment.[5] *See Webb*, 433 F.3d at 688 ("[T]here is no inconsistency between [the claimant]'s complaints and his doctors' diagnoses sufficient to doom his claim as groundless under the de minimis standard of step two."); *Kellie F. v. Acting Comm'r, Soc. Sec. Admin.*, No. 3:24-cv-00333-IM, 2025 WL 1155977, at *2 (D. Or. Apr. 21, 2025) ("Although the evidence of severe impairment during the period of disability may not be particularly strong, at this stage, this Court cannot conclude that

---

[5] The Court also agrees that the ALJ erred by not addressing Plaintiff's reliance on a cane when evaluating the severity of her medically determinable impairments. (*See* Pl.'s Br. at 10-11.) Although the ALJ discounted Plaintiff's testimony about her use of a cane on the ground that Plaintiff allegedly "admitted" at the hearing that her cane was not prescribed by a physician (Tr. 19), at the same hearing Plaintiff's representative identified the medical record which included the medical provider's prescription for a cane. (*See id.* at 34, "[A] cane was prescribed for her to use at Exhibit 9F9 [i.e., *id.* at 701]."; *id.* at 701, an October 4, 2021, treatment note stated, "Patient encouraged to use cane for ambulation for extra support in the interim. Prescription given.").

PAGE 13 – OPINION AND ORDER

'the ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments.'" (quoting *Glanden*, 86 F.4th at 844)); *Brittany R. v. Comm'r, Soc. Sec. Admin.*, No. 6:22-cv-01806-JR, 2024 WL 4449681, at *2 (D. Or. Oct. 9, 2024) ("Although [the] plaintiff's medical record shows her pancreatitis improved over time, it 'includes evidence of problems sufficient to pass the de minimis threshold of step two.' In light of the minimal burden plaintiff bears at step two, the ALJ erred by failing to support his decision that [the] plaintiff's pancreatitis was non-severe with substantial evidence." (quoting *Glanden*, 86 F.4th at 844)); *James V. v. Comm'r Soc. Sec. Admin.*, No. 2:23-cv-1273-MK, 2024 WL 3160487, at *4 (D. Or. June 25, 2024) ("In light of the minimal burden Plaintiff bears at step two, the ALJ erred by failing to support her decision that Plaintiff had no severe medical impairment with substantial evidence."); *Joseph K. v. Comm'r, Soc. Sec. Admin.*, No. 6:23-cv-00311-HL, 2024 WL 414421, at *6 (D. Or. Feb. 5, 2024) ("In sum, Plaintiff 'presented sufficient evidence to overcome the low bar of showing that his claim was not groundless.' The ALJ therefore erred in stopping at step two." (quoting *Glanden*, 86 F.4th at 848)).

Accordingly, the Court remands this case for further proceedings to allow the ALJ to complete the sequential evaluation process.[6] *See Kellie F.*, 2025 WL 1155977, at *2 ("This Court finds that remand, not reversal for payment of benefits, is the appropriate remedy, and thus remands for the step three analysis."); *Joseph K.*, 2024 WL 414421, at *6 ("Because the ALJ

---

[6] The Court expresses no opinion on whether Plaintiff is disabled. *See Webb*, 433 F.3d at 688 ("We do not intimate that [the claimant] will succeed in proving that he is disabled and entitled to disability insurance benefits."); *Joseph K.*, 2024 WL 414421, at *6 n.4 ("This Court expresses no view as to whether Plaintiff is disabled; rather, this Court finds only that the ALJ's denial at step two was premature.").

PAGE 14 – OPINION AND ORDER

stopped at step two, further proceedings are warranted. Upon remand, the ALJ must continue with the sequential analysis and determine whether Plaintiff is disabled.") (citation omitted).

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for further administrative proceedings.

**IT IS SO ORDERED.**

DATED this 29th day of December, 2025.

*Stacie F. Beckerman*
———————————————
HON. STACIE F. BECKERMAN
United States Magistrate Judge